## BROWN SHEET IRON & STEEL CO. v. WILLCUTS, Internal Revenue Collector.

District Court, D. Minnesota, Third Division. July 23, 1929.

Benj. H. Flesher and Herbert T. Park, both of Minneapolis, Minn., for plaintiff.

Lafayette French, Jr., U. S. Atty., of Austin, Minn., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and Henry A. Cox and Lester L. Gibson, Sp. Attys., Bureau of Internal Revenue, all of Washington, D. C., for defendant.

CANT, District Judge. The question here is whether certain steel tanks sold for attachment to, and use on, automobile trucks were properly subject to the excise tax which was assessed against them on the theory that they were to be deemed parts or accessories of such trucks. The matter was submitted mainly on the testimony of Mr. George A. Brown, the president and manager of the plaintiff company, who evidently was entirely truthful in his statements, although, by reason of the nature of the questions involved, there is some slight confusion with reference thereto.

If the tanks in question, as built, equipped, and sold, were a well-known article of commerce, designed, without change, for use in various fields and in various ways, as occasion might require, and in their then state were capable of being put to such varied uses, then no tax of the character here in question should have been levied. Completed articles, capable of and designed for general use in many ways, are to be taxed the same as other similar property. It is only when they are intended to be attached to or used in connection with automobile trucks, and perhaps are primarily adapted for such purpose, that they fall within the class which is subject to the tax here in question. To warrant the imposition of the tax, it should probably be sufficient, if at the time of their manufacture and sale the tanks were definitely intended for such use and were so constructed as to be appropriate therefor. About this there may be some doubt, but, under such circumstances, the tanks fairly come within the spirit of the law. See Treasury Department, United States Internal Revenue, Regulations 47, revised December 1921, page 16, lines 11 to 14, and page 18, lines 21 to 29. These regulations seem to be well considered and sound.

The purpose of the law is to raise revenue for the government. Certain classes of property are designated from which the contemplated tax shall be realized. Among them are automobile trucks, their parts and accessories. We are concerned here to determine correctly whether the tanks upon which the taxes here in question were levied were properly classed as parts or accessories of automobile trucks. The question is not involved, and no arbitrary rules should be employed. The intent of the lawmakers should be ascertained and carried out.

It is with reference to the question of intent above referred to, as respects the proposed use of the tanks in question, and their adaptability for such intended use, that the testimony is somewhat confusing. In his testimony, Mr. Brown stated that, during the first years of the existence of his company, tanks such as those in question were carried or mounted on wagons or sleighs. He further stated at different times that tanks of the character in question, as now manufactured, are used interchangeably on automobile trucks, wagons, and sleighs, and in effect that he had no way of knowing to what use any particular tank was put after it was sold by plaintiff. Such lack of knowledge as to the actual use to which the tanks are put, is not important. The same might be true, no matter how clearly the tanks were designed for automobile use, or how clearly adaptable they were for such purpose. To justify the tax in such cases as this, it is not necessary to trace the tanks to an actual attachment to any automobile truck. The parts themselves are taxable as such. But, to warrant the tax, the information available must fairly show that they are intended, manufactured, and put out for such use, and possibly that they have special adaptability

970

for the purpose intended. The reason why the circumstances must identify them in some way as intended for use in connection with an automobile is that otherwise they are not brought within the law. The uncertainty as to their final use or destiny would be too great. Hammers, wrenches, batteries, tanks, and other articles which are produced in great numbers and are put to a great variety of uses are not taxable as such under the law here in question. Something further must appear. If it is shown that they are intended, manufactured, and put out for use in connection with automobile trucks, and especially, but perhaps not necessarily, that, by reason of their shape or other qualities, they are especially adapted for such use, they thereby become identified as parts or accessories of automobile trucks, and, on that ground, are taxable under the law. It is possible that, where it is fairly shown that the articles were intended, manufactured, and put out for attachment to, or in connection with, automobile trucks, it would not be necessary to show also that, by reason of some special shape or other quality, they are peculiarly adapted to such use. The regulations above referred to are in harmony with this view, and the reasoning in support thereof is satisfactory.

 Since actual identification with an automobile truck and incorporation therein as a part thereof are not necessary to the validity of the tax in question, the true test in such cases is whether it is reasonably clear that the tanks in question were intended, manufactured, and put out for use as part of or in connection with automobile trucks, and are they appropriate for such use. Is it apparent, so far as available information will disclose, that such is to be their ultimate destiny and use? Evidence of "special design" or of "peculiar or special adaptability" is merely persuasive upon the main point, the test above stated.

In addition to the testimony of Mr. Brown above referred to, he also stated, as appears in various places in the record, that he and the plaintiff company differentiated between the automobile tanks and the wagon tanks; that, in making their returns for purposes of taxation, they made a return on automobile tanks but none on wagon tanks; that their books show how many of their manufacture were automobile tanks and how many were wagon tanks; that they "built the frame to fit the automobile chassis that it was supposed to be used for"; and that, before leaving the factory of plaintiff, the tanks were especially mounted either for use on trucks, or for use on wagons or sleighs; and that, before plaintiff shipped or delivered a tank, it knew that such tank was being sold for use on an automobile truck or for use on a wagon or sleigh. The copy of advertisement, marked "Exhibit 1" also has some significance.

From the evidence, it seems reasonably clear that the plaintiff recognizes a distinction between the automobile tanks and the wagon tanks; that certain tanks are unquestionably intended, manufactured, and put out for use on automobile trucks, while others are for use on wagons; and that, in addition, by reason of the differences in mounting, at least the special adaptability and intended use of the various tanks is easily observable and known.

The conclusion is that the particular tanks upon which the tax here in question was levied were parts or accessories for use in connection with automobile trucks, and that the tax was and is valid.